

**UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

TESSA  LUECKE,

      Plaintiff,

CASE NO.:  6:21-cv-1656-CEM-GJK

v.

DEMAND FOR JURY TRIAL

FLORIDA DEPARTMENT OF
CHILDREN AND FAMILIES,
(Official Capacity),

And,

SHEVAUN HARRIS, DCF'S OFFICE OF
SECRETARY OF STATE,
(Official Capacity),

And,

KATHERINE LEVESQUE,
(Official and Individual Capacity),

And,

RACHEL BATTEN,
(Official and Individual Capacity),

And,

JENNIFER FRERICKS,
(Official and Individual Capacity),

      Defendants.
_____/

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

Plaintiff, TESSA MARIE LUECKE, *pro se*, respectfully files this complaint for violation of civil rights and pursuant to 42 U.S.C. § 1983, Amendments to the United States Constitution, for deprivation of rights, privileges and/or immunities secured by law, under the laws of the State of Florida and states the following:

## PARTIES

1. Plaintiff, TESSA LUECKE, who's mailing address is:  P.O. Box 692273, Orlando, Florida 32869, and her phone number is: (813) 521-5113  and her email addresses are: tessaluecke2@gmail.com and tessamarie31@yahoo.com

2. Defendant, FLORIDA DEPARTMENT OF CHILDREN AND FAMILIES "DCF", through their authorized agent; Ms. Shevaun Harris (DCF's Secretary), who's work mailing address is: 1317 Winewood Boulevard, Building 1, Room 202, Tallahassee, Florida 32399, and her work email address is:  shevaun.harris@myflfamilies.com

3. Defendant, SHEVAUN HARRIS, who works for:  Florida Department of Children of Families; Office of Secretary as DCF's secretary of state, who's work mailing address is: 1317 Winewood Boulevard, Building 1, Room 202, Tallahassee, Florida 32399, and her work email address is: shevaun.harris@myflfamilies.com

4. Defendant, KATHERINE LEVESQUE, who works for: Florida Department of Children and Families; Child Protective Investigations as a child protective investigator, who's work mailing address is: 661 South Broad Street, Brooksville, Florida 34601, and her work phone number is: (352) 754-6640 and her work email address is: katherine.levesque@myflfamilies.com

5. Defendant, RACHEL BATTEN, who works for: Florida Department of Children and Families; Children Legal Services, licensed attorney in supervising capacity (who represents DCF and its contracted case management organization, Youth and Family Alternatives and its case workers) and who's work mailing address is: 661 South Broad Street, Brooksville, Florida 34601, and her work phone number is: (352) 330-5608 and her work email is: rachel.batten@myflfamilies.com

6. Defendant, JENNIFER FRERICKS, who works for: The state of Florida Office of Regional Counsel, licensed attorney, who's work mailing address is: 533 W. Main Street, Tavares, Florida 32778, and her work phone number is: (352) 742-6020 and her work email is: jfrericks@rc5state.com

## BASIS FOR JURISDICTION

7. The Plaintiff brings this suit under 42 U.S.C. §1983, for the deprivation of rights, privileges, and/or immunities secured by the Constitution and federal laws against State of Florida Government officials and a State of Florida government agency.  All Defendants are located in and/or reside and work in the state of Florida.

8. Violation of United States Constitutional and federal laws by state officials, including: (a). Perjury. See, U.S. case,  Hardwick V. Vreeken.  Committed perjury and lied, falsified evidence, and suppressed exculpatory evidence to deprive the Plaintiff of custody of her child and did so with malice. Committed egregious acts of misconduct and state government perjury and the knowing use of false evidence are absolutely and obviously irreconcilable with the Fourteenth Amendment's guarantee of Due Process in our courts.    Further, the transgressions were not made under pressing circumstances requiring prompt action, or those providing ambiguous or conflicting guidance.  There are no circumstances in a child welfare proceeding that would permit any government official to bear false witness against a parent . (b.) Due Process rights. Due process constitutional right, the U.S. delineation of the Constitutional parameter's controls state intervention regarding child welfare cases.   (c). The Plaintiff's Fourteenth Amendment that protects the Fundamental Liberty Interests. The Plaintiffs' absolute liberty interest, her fundamental liberty interests of her right to have her child in her care, custody and control while impairing the Plaintiffs right to due process of the law since February 4, 2017. Fundamental liberty interests is protected by due process of law. Fourteenth Amendment that protects the liberty to bring up her child in her established home, directing the upbringing and education of her child under her control, her right for custody, care and nurture of her child residing in her home, her protected interests in the companionship, care, custody, and management of her child. The Plaintiff's right to her well-elaborated constitutional right to live and raise her child without governmental interference. That right is an essential liberty interest protected by the Fourteenth Amendment's guarantee that parents and children will not be separated by the state without due process of law except in an emergency.  The Plaintiffs right to Freedom of personal choice in matters in her family life which is one of the liberties protected by the Due Process Clause of the Fourteenth Amendment. (d). Confidentiality Laws, including, under the Child Prevention and Treatment Act ("CAPTA") / Adoption Assistance, Child Welfare Act of 1980 / Title IV-E of the Social Security Act. Violated the Plaintiffs confidentiality rights when Defendant(s) unilaterally authorized themself to violate the automatic seal order of the child welfare case related to the Plaintiff.  (e). Equal Protection. Plaintiffs' equal protection clause of the Fourteenth Amendment

as a class of one. The Plaintiffs right to Freedom of personal choice in matters in her family life which is one of the liberties protected by the Due Process Clause of the Fourteenth Amendment. Denied the Plaintiff the same protection of laws that are enjoyed by other persons in like circumstances in their lives, liberty, property, and pursuit of happiness. (f). Privacy. Violated the Petitioners constitutional and common law aspects of privacy as to the right to be alone and be free from government intrusion. invasion of privacy, harassment, and intimidation. (g). Retaliatory Conduct.

9. Each Defendant, acting under color of state law maliciously used and/or responsible with entering perjured testimony and fabricated evidence into the relevant child welfare case (Florida Fifth Judicial Circuit, Hernando County, Florida, Case No: 2017-DP-23) to secure and/or maintain the subject child's placement in foster care then ultimately moving and securing termination of the Plaintiff's parental rights from same and this abuse of state power violated/violates the Plaintiffs Fourth and Fourteenth Amendment constitutional rights to her familial relationship with her natural child. See, U.S. case, HARDWICK V. VREEKEN.

## ABSOLUTE / QUALIFIED IMMUNITY

10. The Defendants are not entitled to absolute / qualified immunity from claims that they deliberately fabricated evidence during an investigation and/or made false statements in a dependency petition and/or termination of parental rights petition with affidavit that they signed under penalty of perjury and/or filed any and all documents alike into the child welfare record to sever Plaintiff's protected relationship with her natural legal child. State Government officials who knowingly violate the law are not entitled to immunity. See, HARDWICK V. VREEKEN.

## STATEMENT OF CLAIMS

11. This complaint relates to a state child welfare case. See, state of Florida Fifth Judicial Circuit, Hernando County, Florida, "relevant child welfare case" Case No: 2017-DP-23 (presiding state trial court Judge – Stephen Toner) following its appeal, state of Florida Fifth District Court of Appeal, Daytona Beach, Florida, Case No: 5D19-2427 and its related certified record appears to be filed under DCA Case No: 5D19-2561; containing 2,831 pages and its related cases; state of Florida Ninth Judicial Circuit, Orange County, Florida, Case No: 2020-DR-5082-O, state of Florida Fifth District Court of Appeal, Daytona Beach Florida, Case No: 5D20-1480. Additionally, the Plaintiff has supplemental documents for said certified record. Finally, because said certified

record contains 2,831 documents, the Plaintiff will reference "R" below for the same record with its page number(s).

**COUNT I**
**AGAINST DCF, SHEVAUN HARRIS, KATHERINE LEVESQUE AND RACHEL BATTEN**

12.     On February 4, 2017, the child  "Plaintiff's natural legal child or subject child or child" was in non-relative; Billy Luecke's home "2591 Glenridge Drive, Springhill, Florida 34609" in Hernando County, Florida when the Defendant, DCF and/or Defendant, Katherine Levesque, called the Plaintiff on Billy Luecke's personal cell phone to inform her that DCF opened a child abuse investigation concerning her child without much detail.  Right after same phone call, the Plaintiff went to Billy Luecke's home to inquire further details and pick her child up, at which time, Billy Luecke denied the Plaintiff access to her natural legal child and directed her to call Hernando County DCF, at which time, the Plaintiff left his property and called the Hernando County Sheriff's Office, following Plaintiff meeting with a deputy from same,  at which time, Plaintiff explained to the deputy that Plaintiff was denied access and to pick her child up from Billy Luecke's home, at which time, the deputy made contact with the defendant, DCF and/or defendant, Katherine Levesque who ultimately denied the Plaintiff access and to pick up her child without a valid court order.    From February 4, 2017,  to February 14, 2017,  the Plaintiff repeatedly attempted to gain access and pick her child up through DCF and/or Katherine Levesque who denied the Plaintiff of same without a valid court order while maintaining the Plaintiffs child in the care of non-relative, Billy Luecke's home and directing him to take Plaintiff's child to and from their investigation appointments and interviews.

13.     On February 14, 2017, the Defendant, DCF and/or Defendant, Katherine Levesque called the Plaintiff to invite her to meet with her on same day, at their Hernando County, Florida office location to discuss further details concerning their investigation related to her child. The Plaintiff agreed but when she met with said Defendant(s), they began interrogating her without informing her of her legal rights, including her right to have an attorney present. As a result, said Defendant(s), alleged statement(s) from the Plaintiff were used to commence the relevant child welfare case with DCF's Shelter Petition and continued into DCF's Dependency petition. For example,  DCF's Shelter Petition, in part, states:  "the mother (Plaintiff) originally would not disclose to law enforcement what hotel she had been staying at with the child, but eventually stated that she had been staying at the Suburban Extended Stay Hotel in Hillsborough County. The mother claims that Drake does not exist. The mother states that she never has anyone with her when she visits with the child. The mother claims that she does not have a boyfriend and that her daughter is making everything up. The mother came to the DCF office on Tuesday February

14, 2017, for a face to face with investigators. At that time, the mother tested positive for benzos and amphetamines. The mother states she takes Adderall because she is diagnosed with ADD and takes Xanax to help her sleep. The department has requested that she bring her prescriptions to the shelter hearing." which the Plaintiff did. "The mother has been homeless, living in and out of hotel rooms and her car and unemployed for a majority of the four years." However, on same Shelter Petition, the Defendant(s) state the Plaintiffs then-present home address "1221 Kennewick Ct., Wesley Chapel, Florida 33543." The Plaintiffs alleged statements from February 14, 2017, had resulted with the case moving into termination of parental rights proceedings and terminating Plaintiffs parental rights from same. (R. 35-46, 56-72, 87-92).

14.     On February 15, 2017,  the Defendant, DCF and/or, Defendant, Katherine Levesque filed their "emergency" Shelter Petition with their allegations of sexual abuse, failure to protect and "brief" abandonment. On the same day, a Shelter hearing was scheduled, Plaintiff was present and DCF handed the Plaintiff their Shelter Petition less than 5 minutes before being placed in front of the state trial court.  DCF and/or Katherine Levesque and/or Rachel Batten as the supervising attorney over the child welfare case on behalf of DCF had filed their alleged emergency Shelter Petition to commenced the relevant child welfare case that alleges, in part, as to their brief abandonment allegations that relates to non-relative, Billy Luecke, alleging, that he "is not able to continue caring for the child much longer" but same said Defendants did not remove the Plaintiff's child from said non-relatives home until approximately 8:26pm on February 15, 2017. (R. 57, moreover, the Shelter Petition order indicates timestamped at 2:28pm – R. 57, therefore, not 8:26am – R.36). The Plaintiff's child was placed in foster care on an "emergency" shelter order while the Plaintiff had stable housing as listed on the same Shelter Petition and its order "1221 Kennewick Ct., Wesley Chapel, Florida 33543." (R. 35-46, 56-72).   Additionally, DCF continued same arguments from their Shelter Petition, including,  non-relative, Billy Luecke, alleging, that he "is not able to continue caring for the child much longer" into the case, including, within their Dependency Petition that determines, including, dependency adjudication and, in part, leading into and resulting with termination of Plaintiffs parental rights.  (R. 87-92, 93-99, 1617-1638, 2198-2211).

15.     On February 15, 2017, and thereafter, the Defendant, DCF and/or Defendant, Katherine Levesque failed to make timely reasonable efforts to place the Plaintiffs child in her home versus foster care.  In fact, the Plaintiffs child was in the care of non-relative, Billy Luecke on February 4, 2017, until February 15, 2017,  located at "2591 Glenridge Drive, Springhill, Florida 34609" in the Fifth Judicial Circuit in Hernando County, Florida while, the Plaintiff was residing at "1221

Kennewick Ct., Wesley Chapel, Florida 33543" in the Sixth Judicial Circuit in Pasco County, Florida and the child had/has no relatives within the Fifth Judicial Circuit, Florida and in fact, the Plaintiff provided the defendant(s), DCF and Katherine Levesque with copies of her residential lease agreement for "1221 Kennewick Ct., Wesley Chapel, Florida 33543" that indicates stable housing and listed the Plaintiff as the only tenant and occupant of the home and as mentioned, the Defendants, DCF and Katherine Levesque listed same address for Plaintiff on their Shelter and Dependency Petition.  In fact, the lack of reasonable efforts from said Defendant(s) to place the Plaintiffs child in her home leads into separating Plaintiff from her natural legal child and in part, places and maintains the Plaintiffs child remaining in strangers' homes in foster care and DCF pursing adoption between foster caretakers and the Plaintiffs natural child.    The outstanding purpose of  Chapter 39, Florida Statutes is to preserve and strengthen the child's family ties and only placing child in foster care when the child's safety cannot be adequately safeguarded without such removal.  (R. 186, 35, 57, 74, 87).  See, F.S. 39.001., F.S. 787.02., F.S. 39.506(7), F.S. 39.301, F.S. 39.521, 45 CFR § 1356.21(b)(1)(i), 42 U.S. Code § 5106, Florida DCF, child protection services operating procedure policy CFOP 170-5.  On March 1, 2017, the gaurdian ad litem program discharged and was granted same by state trial court due to conflict against the Plaintiff and child because non-relative, Billy Luecke previously worked for the gaurdian ad litem program in Hernando County and on March 22, 2017, the state trial court appointed an attorney ad litem, Stacy Moord who moved to withdrawal from the child's representation and granted same on June 1, 2018.

**COUNT II**
**AGAINST RACHEL BATTEN, DCF AND SHEVAUN HARRIS**

16.    On September 25, 2018,  the Defendant, Rachel Batten filed a judicial review social report "reason for agency's involvement" that Plaintiff "needs to understand how important it is in her child's life and engaging in a lifestyle that will promote safety and wellbeing for child"  and on December 27, 2018,  Rachel Batten filed a judicial review social study report arguing for "sole goal of adoption" and on February 6, 2019, Rachel Batten filed "therapy records" for the subject child related to DCF's Dependency Petition, in part, states the child "reported she wanted to kill herself" reason for referral "child was molested by an acquaintance of her mother several years ago" non-relatives "were the caregivers for most of the child's life" the Plaintiff "was diagnosed with ADD "attention deficit disorder" though she never completed the psychological evaluation." Abuse history "shelter order reported that child was hit with a hairbrush by the mother's paramour at least once – this would happen in the recent past. Child reported she doesn't

remember this" Sexual "report indicate that child was digitally penetrated and made to sleep naked in bed with her mother paramour at least one time" "court documents indicate that this abuse was more than one time, and would happen when child was visiting mother and brought her to hotel to stay" "child was also exposed to her mother having sex with Drake, same man she reported as her abuser" "she reported that her privates and bottom both hurt after the abuse" "child was never in the care of her mother and she left child in the care of non-relatives" "child was abused during a visit with her mother – and left child in the care of non-relatives who could no longer care for child" "child wants to live with foster caretakers" to adopt her. "she is victim of past sexual abuse while in the care of her mother" DSM IV Diagnosis "post-traumatic stress disorder" "reactive attachment disorder" "removal from home, disclosure of sexual abuse, living in foster care" and it's attached mental health treatment plan directly relates to sexual abuse allegations from DCF's dependency petition, and the subject child being placed and maintained in foster care. (R. 1384-1391) and on April 3, 2019, the Plaintiff filed a Motion into the state trial court to set aside/vacate the dependency adjudication order and requested for appointment of counsel for same which followed a scheduled hearing for April 23, 2019, at which time, the state trial court denied the Plaintiff's requests and on March 3, 2019, the Plaintiff filed a motion seeking order from the denial with notice of intent to appeal same which followed Rachel Batten filing a petition to terminate the Plaintiffs parental rights on May 15, 2019 knowing the Plaintiff was seeking to appeal the final order of dependency and appointment of counsel to intentionally interfere with the Plaintiff obtaining same and knowing the Plaintiff's deny plea against dependency remains. (R. 1470-1481, 1492-1494, 1495-1496, 1497-1498, 1499-1500, 1501-1503, 1504, 1505-1506, 1507-1527).

In fact, the Defendants and Defendant, Rachel Batten knew:

A. On February 15, 2017, the Plaintiffs child was placed in foster care related to the sexual abuse and failure to protect allegations on DCF's Shelter Petition.
B. On April 5, 2017, the criminal investigation report from Hillsborough Sheriff's Office related to DCF's sexual abuse and failure to protect allegations returned as unfounded and closed.
C. On August 3, 2017, DCF stricken same sexual abuse and failure to protect allegations from the case.
D. At all times, DCF was able to contact and communicate with the Plaintiff.
E. On February 14, 2017, and thereafter, the Plaintiff produced copies of her residential lease agreement, in fact, "1221 Kennewick Ct., Wesley Chapel, Florida 33543" shows Plaintiff as the only tenant and occupant of the home.

F. At all times, the Plaintiff had stable housing for her and her child.

### COUNT III
### AGAINST DCF, SHEVAUN HARRIS AND RACHEL BATTEN

17.    On November 16, 2018, the Plaintiff's then-boyfriend, Louis Minnis contact DCF through their contracted provider, Youth and Family Alternatives through their case manager; Corey Washington, and approved through, Defendant, Rachel Batten as DCF's attorney on relevant case in her supervisor capacity,  to request information so that the Plaintiff could spend more time with her child and on November 27, 2018,  Corey Washington responded and advise Louis Minnis that he would need to text or email Corey Washington his full name, date of birth and social security number to run a level one (1) criminal background check on him because the subject child is placed in foster care, at which time, Louis Minnis provided Corey Washington with the requested information. On December 5, 2018, a status hearing was conducted, at which time, Corey Washington alleged concerns on Louis Minnis' background check while Louis Minnis was in the audience observing as a non-party to the case and Plaintiff was present and right after the hearing, the Plaintiff and Louis Minnis joined Corey Washington outside the courtroom to inquire about the alleged concerns on Louis Minnis' background check, at which time, Corey Washington alleged that Louis Minnis had a cocaine possession charge in 1997, following, Louis Minnis requesting for a copy of same, following Corey Washington stating he did not have a copy of the report producing the alleged said criminal charge. On December 7, 2018, Corey Washington contact Louis Minnis to request him to text him to confirm his date of birth, social security number and that he would delete same, right after. On December 27, 2018, Corey Washington through DCF filed a "status review report" into the child welfare case alleging four separate criminal charges against the alleged level 1 background check that DCF ran against Louis Minnis' criminal background check from FDLE -- 1.) 1986 – Disorderly Conduct, Obstructing Justice; 2.) 1991 – Laceny, Resisting arrest w/o violence, Corrupt threat against LEO, Dropping/Abandoned; 3.) 1997-Cocaine possession, Dropped/Abandoned; 4.) 1999 – Municipal Ordinance Loitering, Resisting arrest w/o violence Municipal.  On January 15, 2019, the Plaintiff with permission from Louis Minnis filed a redacted copy of his level 2 (two) background check from FDLE showing its returned information with no criminal charges against Louis Minnis. (R. 1207-1210).  Ultimately, the filed alleged conducted background check was intentional because both state and federal law requires a proper background check, including level 2 with fingerprints through an authorized facility in order to facilitate visitation with children placed in foster care, furthermore, Louis Minnis was/is not a party to the relevant child welfare case that's under seal.

## COUNT V

### AGAINST JENNIFER FRERICKS, DCF AND SHEVAUN HARRIS

**18.**     On August 3, 2017, a hearing was conducted for the state trial courts acceptance and enforcement of an alleged case plan agreement contract, acceptance of an alleged dependency consent plea from the Plaintiff, acceptance of alleged consent plea from the Plaintiff to adjudicate her child dependent, acceptance of an alleged consent plea to adjudicate the Plaintiff an unfit parent based on DCF's brief abandonment allegations, acceptance of alleged consent plea from the Plaintiff for her child, the subject child to remain in foster care, acceptance of alleged consent plea from the Plaintiff with her understanding of the risks from same related to termination of parental rights, at which time, the court transcript states:

> "DCF:  Your Honor, we're here today for a pretrial hearing for the mother's case plan acceptance. I do have original case plan that we signed at the deposition. JENNIFER FRERICKS:  Thank you. Yes, Your Honor, we have reached an agreement with regards to this case. The goal of the case will be reunification. The goal date will be February 15, 2018, which is one year from removal. If the mother is engaged in her case plan, we have not discussed this, but if she is engaged in her case plan, due to the length of time it took to get to this point, we may have to request an extension of that goal date. Ma'am, do you have any questions with regards to the case plan? PLAINTIFF: Not at this time. JENNIFER FRERICKS: Okay. And the goal of that case is reunification. You have one date from removal. You understand that if you fail to complete the case plan by that date, that the department could seek termination of parental rights if they felt it was in the child's best interest, okay. And has anyone forced you or coerced you to enter into this case plan today? PLAINTIFF: No.   JENNIFER FRERICKS: Are you under the influence of any drugs or alcohol today? PLAINTIFF: (Inaudible response.) JENNIFER FRERICKS:  Were you at the deposition when this was signed? PLAINTIFF: No. JENNIFER FRERICKS: Okay, would you like the Court to accept this case plan today with the understanding of the goal of reunification? PLAINTIFF: Yes. JENNIFER FRERICKS:  And that is your signature there on Page 13 of 14?  PLAINTIFF: Yes. JENNIFER FRERICKS: Okay, All right. Your Honor, I'd ask the Court to accept the case plan? And they'll be amended findings of fact with regards to this case as well.  The department will be striking the failure to protect to the sexual abuse completely from the findings of fact in this case. DCF: And that is what we've agreed upon. We're pursing just the abandonment. STATE TRIAL COURT: All right. And I'll make the appropriate findings then based on the agreement.  And, Ms. Luecke, you understand that this case plan is the key to getting Ashley back?  PLAINTIFF: Yes. STATE TRIAL COURT: Is everything in this case plan something you can do? PLAINTIFF: (Unintelligible.) STATE TRIAL COURT:  Okay. You're going – you're going to do everything you can to accomplish

this case plan?   PLAINTIFF: Yes.   STATE TRIAL COURT: Okay. And nobody's threatened you in any way to sign off on this?   PLAINTIFF: No.   STATE TRIAL COURT: I know that you have been to all of the hearings faithfully which tells me that there's a good chance you're going to follow through with this and the main question that I have at this moment is do you want me to accept this case plan? PLAINTIFF: Yes. STATE TRIAL COURT: Okay. I'll accept the case plan, make the appropriate findings.   STATE TRIAL COURT: All righty then. Anything else from anybody?   DCF: Nothing further from the department, Your Honor.   JENNIFER FRERICKS:  Your Honor, we had discussed the department having discretion to grant the mother unsupervised visitation upon approval of the attorney ad litem. DCF: And we have no objection to that. STATE TRIAL COURT: Who's the attorney ad litem on this?   JENNIFER FRERICKS: Stacy Moord.   STATE TRIAL COURT: Oh, okay. All right. Then granted. Anything else? JENNIFER FRERICKS: No, sir. STATE TRIAL COURT:    Department, anything else?   DCF:  Nothing further. STATE TRIAL COURT:  All right. Thank you. That'll take care of it."

The Defendant, Jennifer Frericks intentionally skipped to the signature page of the case plan contract and did not confirm the Plaintiff understands the risks of her parental rights being terminated related to the case plan contract acceptance, (R. 327), further, she did not confirm the Plaintiff agreed to the same case plan contract that DCF filed for the state trial court to accept. Jennifer Frericks is the same appointed attorney who represented the Plaintiff during the dependency arraignment March 7, 2017, hearing when the Plaintiff was present and entered a deny plea against dependency through Jennifer Frericks, moreover, Jennifer Frericks was also present during the July 27, 2017, deposition when DCF explained the case plan agreement, stating: "the case plan is specifically designed to address sort of the instability that you've experienced.  We help with job finding, we help with finding housing that's in your budget. If you're working there are certain programs that actually help with down payments and things like that, that help you sort of get back on your feet.  That is a big part of what we do.  So, you have that opportunity to enter into a case plan.  I mean, we also – you absolutely have a right to trial. I just – but what we're offering is a case plan that does help address these specific issues you've been experiencing -- I just want you aware that, is what we're offering – and just to be clear, we're still offering that if you don't wish to proceed with this deposition – Of course, you would have to speak with your attorney about that, but we just wanted to put that on the record" Plaintiff's response:  "can I review the case plan"  DCF:  "Let me see if I have a copy with me" Jennifer Frericks: "do you want to go off the record for a little bit?"  DCF: "off the record."  End.  The transcripts would show same, therefore, the Defendant, Jennifer Frericks provided misadvise and made affirmative misrepresentation regarding the terms and conditions of the case plan contract

and the Plaintiffs agreement was/is reliance on that misrepresentation. The Plaintiff agreed to a separate and different case plan contract (consistent with a safety plan) from the court's acceptance, and it does not include any written warning related to her parental rights and/or dependency plea information related to same.  The case plan accepted by the state trial court is procured by fraud.  Further, same case plan produced the final order of dependency titled "Order on Adjudication Upon Consent, Order of Disposition, Case Plan Acceptance, Notice of Hearing" that was served on Jennifer Frericks on October 13, 2017, after the Court granted her withdrawal on September 26, 2017.

**COUNT V**
**AGAINST RACHEL BATTEN, DCF AND SHEVAUN HARRIS**

**19.**     On January 25, 2019, the Plaintiff filed into the under seal child welfare case no: 2017-DP-23, a copy of a "threat/intimidation" letter she received that was sticking out from under her front door mat while living at "1221 Kennewick Ct., Wesley Chapel, Florida 33543" - on or around January 25, 2019, at her then-residence at "1221 Kennewick Ct., Wesley Chapel, Florida 33543" related to relevant child welfare case (state of Florida Fifth Judicial Circuit, Hernando County, Florida, "relevant child welfare case" Case No: 2017-DP-23), that's under seal. The letter states "Tessa Luecke – you will be harmed and (subject child) will be adopted if you go to anyone about this letter. Don't believe me, try it. Our plan is to have your daughter adopted and you keep challenging it as if you are going to win. We can falsify documents and you are going to do what? Nothing but lose your daughter and maybe yourself. We have the ability to  brainwash your daughter against you  and we will continue to  separate you both. If you don't undergo the psychological evaluation then we will continue to retaliate against you and who knows what will happen to you.  You are only allowed to visit with your daughter supervised for 2 hours a week since the case opened so understand we control this case you stupid b****.  We are government employees who can cause real damage to you – the case will remain in Hernando County, and you will undergo the psychological evaluation as ordered and advised in this letter and then maybe you'll have a chance to get your daughter back." (R. 1369-1370).  As a result, the Plaintiff purchased surveillance cameras while living in fear from same.  During same time, the only parties involved in the child welfare case no: 2017-DP-23 (and continues), is the jurisdiction in the Fifth Judicial Circuit, in Hernando County, Florida through Honorable Stephen Toner and DCF attorney, Rachel Batten. No hearing was conducted related to this matter, but the appearance of safety concerns continues but through misuse of Plaintiff's identity, her personal belongings and space related to said case that's under seal. On July 22, 2019,  the Plaintiff moved to  "9858 Namaste Loop Apt  3203, Orlando, Florida 32836"  with her then-boyfriend,

Louis Minnis, then on May 28, 2020, they transferred apartment units to "9874 Namaste Loop, Apt 4211, Orlando, Florida 32836" and following the Plaintiffs move to Orlando, Florida and notifying the court of same, the state trial court entered an order terminating the Plaintiff's parental rights on October 8, 2019 with it's order titled "Adjudicatory Order of Termination of Parental Rights and Manifest Best Interests" following appeal from same on October 17, 2019, then on March 12, 2020, the state appellate court only having jurisdiction over the termination of parental rights final order and not the dependency adjudication final order, was deprived its review to review the entire child welfare case, as a result, entered its order affirming the final order of termination of parental rights. Then, on May 28, 2020, the Plaintiff and her then-boyfriend, Louis Minnis timely moved into adoption proceedings for same subject child by commencing their independent adoption case into the Ninth Judicial Circuit in Orange County, Florida and after commencing the adoption case, the Plaintiff included the related child welfare record documents to prove her due process rights were violated, as such arguing her right to move into adoption proceedings for same subject child. Eventually, same moved into appellate court related to jurisdiction and on September 29, 2020, the Plaintiff and Louis Minnis filed their final brief for same, on or around 4:55pm, barely missing the deadline and then on or around 5:00pm, the Plaintiff and Louis Minnis left together, in Louis Minnis vehicle to run errands and on or around 8:05pm, the Plaintiff and Louis Minnis were involved in a car accident that resulted with both in the hospital for almost a month. The Plaintiff was discharged from the hospital on October 21, 2020, and on or around November 3, 2020, and thereafter, the Plaintiff and Louis Minnis began experiencing excessive identity theft, including through all their electronic devices and invasion of privacy like situations related to child welfare case no: 2017-DP-23. For example, on or around November 3, 2020, and thereafter, Louis Minnis received an excessive number of spam/fraudulent calls. On or around November 3, 2020, and thereafter, the Plaintiff noticed TV shows/movies through their cable, TV shows/movies through their Roku / Firestick appeared as if they're watching TV shows and movies that were manipulated to be personal with Plaintiff and in fact, on or around November 10, 2020, and thereafter, the Plaintiff noticed on her electronic devices "cast to device – Roku express / (Courtney's) Fire stick, Roku streaming stick." On or around November 3, 2020, and thereafter, the Plaintiff received an excessive amount of sponsored ads through her social media and other apps (with around 800 screenshots), for example, "after getting my house broken into, my bank accounts drained, and moving, I thought nothing could surprise me but I was wrong – my daughter is my whole world and I would do anything to protect her – so packing up my SUV in the middle of the night after coming home to find our place was

ransacked – I'd discover that someone had taken all of my money out of my accounts later, I was sure there were no more surprises in my future." "you should be smart enough to notice when loses head over you – especially when its been going on for four years" "in this town, games are played on and off the field – freefall Spring Hill blog" "an arranged marriage I didn't chose" "law review provided Rachel an opportunity to research, write, edit and publish parents facing the termination of their parental rights" "it's not what you know, but who you know" "things are heating up at the community of species Government, and I'm right in the thick of it all – they might seem to have a drop on us right now, but we're going to turn the tables on them" "you'll never get your daughter back being with Lew" "you failed by moving to Zen Luxury community" "you'll be homeless and penniless in no time" "suddenly, her SUVs brakes locked up and battery won't start" "now you can claim disability in a wheelchair" "car accidents suck, huh?" "your PI injury damages snatched by the government -- deal with your injuries" "adoption of government and you're moving away or be dead" "mental manipulation works its wonders" "you will not win this fight, go adopt a dog" "hip recovery hurts, what else can happen" related to Plaintiff's car accident  "keep it up and you'll be missing and I'll help them look for you" "our no contact rule manipulation was genius" "reroute that call and text, she can't see that" "reroute that message, she can't see that" "from betrayals to the sudden guardianship of children" "why are you in my apartment – giving away the fear she is trying to conceal" "sit, this time I leave no room for objection – I know everything about you, I know your name, I know where you live, your drink choice, what you study." And same messages have become reality – for example, the Plaintiff is now homeless and almost penniless while experiencing ongoing hacking redirection of her data use, including web and her apps when she engages in certain data browsing internet results, including in relation to this Court, at which time, she experiences malicious personal financial loss and/or other malicious activity related to her identity, for example, on September 3, 2021, the Plaintiff thoroughly reviewed rates and fees to book a hotel on her phone and paid for it, however, when she arrives at the hotel, the Plaintiffs is told that she must pay additional charges, such as, resort fees that were not disclosed anywhere on the same app that Plaintiff often uses. Same issue occurred on September 27, 2021, with a different hotel and different app that she previous has used often with no problem. The Plaintiff cannot effectively seek employment, secure a new personal injury attorney to continue her auto accident case with its lawsuit or live a normal life related to the child welfare case.  Since on or around November 3, 2020, and/or thereafter, the Plaintiff had experienced unauthorized access to her recent/previous apartment home, unauthorized access to her personal vehicle with a possible tracking scheme of her vehicle, social

engineering, phishing, phishing attacks, email phishing, spear phishing, whaling, email compromised, clone phishing, voice phishing, Screen Casting, SMS phishing, Pretexting, malware, crypto mining malware and crypto jacking, ransomware, spyware, scareware, adware, trojans, WiFi Network hacking, scams, fake technical support, the grandparent scam, virtual kidnapping extortion, unpaid bill scams, job scams, robocalling scams, attack chain phases, links in the attack chain, email attack vectors, texting attack vectors, phone calls attack vectors, website attack vectors, software attack vectors, USB attack vectors, WiFi attack vectors, PII exposure, medical identity theft and potential manipulation of records or future with same, possible alleged subject child identity theft, threats/issues to personal electronic files and manipulation of same, social media mining, IRS impersonation, phone mobile port out scams, phone mobile malware, threats against l0T devices, threat of or action with redirecting of postal mail, redirecting and monitoring the Plaintiffs electronic data, phone calls, text messages, fishing expedition to gather evidence and/or take other inappropriate actions including privacy and personal identity interference to invade and manipulate the Plaintiff and her relationship with Louis Minnis, gain control, gain illegal evidence, set the Plaintiff up for failure, potential unauthorized access to hotel rooms under Plaintiffs name, potential unauthorized access to hotel systems and cameras related to the Plaintiff, job scams, etc.

## INJURIES

20.    As a result of the forgoing, its continuance and/or into the future, the Plaintiff suffers from loss of familial relationship with her natural child since February 4, 2017, loss of ability to enjoy a normal life with her natural child since February 4, 2017, emotional distress, pain and suffering, loss of stable housing leading into and/or will be direct and unreasonable homelessness while the Plaintiff had stable housing the entire child welfare case - "1221 Kennewick Ct., Wesley Chapel, Florida 33543" and "9874 Namaste Loop, APT 4211, Orlando, Florida 32836", loss of income, loss of consortium, loss of identity or experiencing identity theft issues and/or future identity theft issues from misuse of identity information, invasion of and loss of privacy and loss of serious intimate relationship leading into marriage.

**WHEREFORE**, for the forgoing reasons, the Plaintiff, TESSA LUECKE, respectfully demands judgement for compensatory and/or punitive damages and cost, including pre-judgment interests on all out-of-pocket damages against all Defendants, and for whatever further relief this Court deems appropriate. Additionally, the Plaintiff request appointment of counsel

to the subject child who's a minor, if appropriate, and/or judgement for one million dollars against all Defendants.

## DEMAND FOR JURY TRIAL

The Plaintiff hereby respectfully demands a jury trial on all issues so triable.

## CERTIFICATION AND CLOSING

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

Date: October 6, 2021:

TESSA LUECKE,  Plaintiff
P.O. Box 692273
Orlando, Florida 32869
(813) 521-5113
tessaluecke2@gmail.com
tessamarie31@yahoo.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the forgoing has been or will be furnished on October 6, 2021, to the following as listed below:

| | | |
|---|---|---|
| *(service by summons will be issued to)*<br>Florida Department of Children and Families<br>Office of Secretary of DCF<br>Agent for DCF: Ms. Shevaun Harris (Secretary of Florida for DCF)<br>shevaun.harris@myflfamilies.com<br>1317 Winewood Boulevard<br>Building 1, Room 202<br>Tallahassee, Florida 32399 | *(service by summons will be issued to)*<br>Ms. Shevaun Harris<br>Florida Department of Children and Families<br>Office of Secretary<br>shevaun.harris@myflfamilies.com<br>1317 Winewood Boulevard<br>Building 1, Room 202<br>Tallahassee, Florida 32399 | *(service by summons will be issued to)*<br>Ms. Katherine Levesque<br>Florida Department of Children and Families<br>Children Protection Services<br>katherine.levesque@myflfamilies.com<br>(352) 754-6640<br>661 South Broad Street<br>Brooksville, Florida 34601 |
| *(service by summons will be issued to)*<br>Ms. Rachel Batten<br>Florida Department of Children and Families<br>Children's Legal Services<br>rachel.batten@myflfamilies.com<br>(352) 330-5608<br>661 South Broad Street<br>Brooksville, Florida 34601 | *(service by summons will be issued to)*<br>Ms. Jennifer Frericks<br>jfrericks@rc5state.com<br>(352) 742-6020<br>533 W. Main Street<br>Tavares, Florida 32778 | *(a copy will be served by certified mail)*<br>Florida Fifth District Court of Appeal<br>(386) 947-1530<br>300 S Beach Street<br>Daytona Beach, Florida 32114<br><br>*(a copy will be served by certified mail)*<br>Federal Bureau of Investigations<br>(813) 253-1000<br>5525 West Gray Street<br>Tampa, Florida 33609 |

TESSA LUECKE,  Plaintiff
(813) 521-5113
tessaluecke2@gmail.com
tessamarie31@yahoo.com
P.O Box 692273
Orlando, Florida 32869